# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JOHN TYLER,

          Petitioner,

          v.

DEPARTMENT OF JUSTICE, Bureau of
Prisons, HARLEY LAPPEN, et al., Director,
DAVID L. WINN, et al., Warden,

          Respondents.

**Civil Action No. 04-CV-40101-DPW**

## RESPONDENT'S[1] MEMORANDUM IN SUPPORT OF HIS OPPOSITION TO PETITIONER'S REQUEST FOR RELIEF AND MOTION TO DISMISS

## INTRODUCTION

Petitioner, John Tyler ("Petitioner" or "Tyler"), an inmate at Federal Medical Center

Devens ("FMC Devens"), brought this habeas corpus action, pursuant to 28 U.S.C. § 2241,

challenging the legality of a new policy of the Bureau of Prisons ("BOP") regarding eligibility

for placement in Community Corrections Centers ("CCC") at the end of a prisoner's sentence.

Petitioner has also challenged the BOP's calculation of good conduct time ("GCT") with respect

to his overall sentence. For the reasons stated below, the petition fails to state a claim upon

which relief can be granted and therefore should be dismissed.

---

[1] The only proper respondent in this action is David L. Winn, Warden of FMC Devens where the Petitioner is currently in custody. In <u>Rumsfeld v. Padilla</u>, --U.S.-- (June 28, 2004), the Supreme Court (5-4) reaffirmed longstanding habeas corpus jurisprudence, holding: 1) the only proper respondent in a § 2241 habeas case is the prisoner's immediate custodian; and 2) the only court with jurisdiction is the district court where the prisoner is confined. Accordingly, the other named respondents should be dismissed from this action and removed from the caption.

## STATEMENT OF FACTS[2]

1.      Petitioner Tyler, Register Number 10466-036, is a federal inmate who has been incarcerated at FMC Devens since March 23, 2004.  See **Exhibit 1**, Declaration of Stephanie Scannell ("**Scannell Dec.**"), **Document 1a**.

2.      On March 28, 2001, Petitioner was sentenced in the United States District Court for the District of Maine to a 35-month term of incarceration with a one year term of supervised release to follow for Counts 1, 2, and 3, Fraudulent Acquisition of a Controlled Substance, in violation of 21 U.S.C. § 843(a)(3); a concurrent 41-month term of incarceration with a three (3) year term of supervised release to follow for Count 4, Health Care Fraud, in violation of 18 U.S.C. § 1347; Count 5, Fraudulent Social Security Benefit Acquisition, in violation of 42 U.S.C. § 1383(a)(3)(A); Count 6, Unauthorized Acquisition of Food Stamps, in violation of 7 U.S.C. § 2024(b)(1); and Count 7, Use of a False Social Security Number, in violation of 42 U.S.C. § 408(a)(7)(B).  See **Scannell Dec., Document 1b**, Judgment and Commitment Order dated March 28, 2001, for Case Number 00-CR-75-B-S.[3]

3.      On August 12, 2003, Petitioner was also sentenced by the United States District Court for the District of Maine to a 12-month and 2-day term of incarceration with a three year term of supervised release to follow for Fraudulent Acquisition of Controlled Substance, in violation of 21 U.S.C. § 843(a)(3).  See  **Scannell Dec., Document 1c**, Judgment and Commitment Order dated August 12, 2003, for Case Number 02-CR-84-B-S.  This sentence was ordered to be served

---

[2]      In accordance with the standard of review upon a motion to dismiss, the factual allegations of the complaint are accepted as true for purpose of this motion.  See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994).

[3]      Throughout his Petition, Petitioner inexplicably references 1991 as the year of his sentencing.

consecutively with the prior federal sentence imposed on March 28, 2001.  Id.

4.      The date sentence computation began on Petitioner's current sentence is March 28, 2001, the date of imposition of his first federal sentence.  See **Scannell Dec., Document 1d**, Sentence Monitoring Computation Data.

5.      Petitioner received prior jail credit of 57  days for the time periods from October 18, 2000 through October 18, 2000 (1 day) and January 31, 2001 through March 27, 2001 (56 days).  Id.

6.      Under 18 U.S.C. § 3624(b), and pursuant to the BOP's established practice concerning the calculation of GCT credits, the BOP has determined that Petitioner is entitled to 208 days of GCT.  See **Scannell Dec., Document 1e**, Sentence Monitoring Good Time Data.

7.      Assuming Petitioner is granted all GCT available to him from this time forward, his projected sentence satisfaction date is December 7, 2004.  See **Scannell Dec., Document 1d**, Sentence Monitoring Computation Data.  In the event that all of his GCT is disallowed, Petitioner's full term sentence expiration date is July 3, 2005.  Id.

8.      The BOP has determined that the Petitioner will be eligible for placement in a CCC (or halfway house) for the last 30 days of his sentence, beginning November 8, 2004.  See **Scannell Dec., Document 1s**, e-mail from Community Corrections Office, Boston, MA; **Document 1t**, halfway house notice of acceptance; **Document 1g**, Inmate Request to Staff and Response.

9.      The Petitioner contends that a December 2002 change in BOP practice concerning CCC placement is unlawful and that he is entitled to be considered for a six month CCC placement. Petition at pp. 2-8.

10.     The Petitioner also contends  that the BOP has incorrectly determined his GCT credits and that a correct calculation should yield 232.2 days of GCT.  Petition at pp. 3 (223.6 days) and

8-9 (232 days and 223.2 days).[4]

11.    On May 14, 2004, the Petitioner submitted an Inmate Request to Staff with respect to the

BOP's calculation of his CCC time of 30 days instead of 4 months (See **Scannell Dec., ¶¶ 3-4,**

**Document 1g**, Inmate Request to Staff and Response), and an initial appeal of the BOP's

response to his request at the institutional level at FMC Devens (See **Scannell Dec.,¶¶ 3-4,**

**Document 1h**, Administrative Remedy Generalized Retrieval).  He has not, however, exhausted

his administrative remedies since he has yet to appeal these issues to the BOP's Regional or

Central offices.  Id.  There is no indication in the record that the Petitioner has initiated any

administrative review concerning the BOP's calculation of his GCT.  Id.  Petitioner admits that

he has not exhausted his administrative remedies.  Petition at p. 6.[5]

---

[4]    Petitioner has made several math errors in his calculations, but it appears that the
correct calculation for the formula he wishes to apply is 232.2.

[5]    The Petitioner's claims that the BOP has improperly calculated his GCT credits
should be dismissed under the traditional requirement that a prisoner must exhaust his
administrative remedies before applying for habeas relief under 28 U.S.C. § 2241.  E.g., Rogers
v. United States, 180 F.3d 349, 357-58 (1st Cir. 1999); Moscato v. Federal Bureau of Prisons,
98 F.3d 757 (3d Cir. 1996); Gonzalez v. Perrill, 919 F.2d 1 (2d Cir. 1990); United States v.
Flanagan, 868 F.2d 1544, 1546-47 (11th Cir. 1989).  Similarly, the Petitioner's challenge to
the BOP policy regarding CCC placement, which is in effect a challenge to the conditions of his
confinement, is subject to the strict statutory exhaustion requirement of 42 U.S.C. § 1997e(a).
See Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("we will not read futility or other
exceptions into statutory exhaustion requirements where Congress has provided
otherwise").

## ARGUMENT

### I.

### THE BUREAU OF PRISONS HAS PROPERLY APPLIED 18 U.S.C. § 3624(c) TO LIMIT THE PETITIONER'S ELIGIBILITY FOR PLACEMENT IN A COMMUNITY CORRECTIONS CENTER TO THE LAST 30 DAYS OF HIS SENTENCE

Prior to December 2002, it was the policy of the BOP, as expressed in an Inmate Handbook and a BOP document entitled Program Statement Number 7310.04 (December 16, 1998) (portions attached as **Exhibit 2**) that it could consider inmates for placement in a CCC for more than the last ten percent of an inmate's term of imprisonment or more than the last six months of the sentence, if appropriate. The Petitioner alleges that he has been a model inmate and should benefit from this policy. Petition at pp. 2-8.

On December 13, 2002, the Office of Legal Counsel ("OLC") of the United States Department of Justice issued an opinion concluding that the Federal Bureau of Prisons' ("BOP") former policy of initially designating to CCCs certain defendants sentenced to terms of imprisonment was inconsistent with 18 U.S.C. §§ 3621, 3624(c), and the U.S. Sentencing Guidelines and therefore unlawful. This opinion (the "OLC Memorandum," attached as **Exhibit 3**) also indicated that the BOP's past practice of transferring offenders to CCC's for a period exceeding the time limit specified in 18 U.S.C. § 3624(c) (the last ten percent of the term of imprisonment, not to exceed six months) was in violation of 18 U.S.C. § 3624(c) and thus impermissible. See id. at n.6. Subsequently the BOP established procedures for implementing the policy change. See **Exhibit 4** (December 20, 2002, BOP Memorandum to BOP Chief Executive Officers).

The Petitioner does not develop any independent argument concerning the December 2002 change in policy, but instead simply refers to two district court opinions that have ruled that

the change of policy is unlawful.  See, e.g., Monahan v. Winn, 276 F.Supp.2d 196, 198 (D. Mass. 2003); Zucker v. Menifee, 2004 WL 102779 (S.D. N.Y., Jan 21, 2004).[6]  Petition at p. 8. Accordingly, the Respondent will address the major arguments presented in those cases.

At the outset, the Respondent notes that other courts have upheld the validity of the BOP policy.  Cohn v. Federal Bureau of Prisons, 302 F.Supp.2d 267 (S.D.N.Y. 2004); Benton v. Ashcroft, 273 F.Supp.2d 1139 (S.D. Cal. 2003), appeal docketed, 9th Cir. No. 03-56343.  Most of the courts that have ruled against the government have done so in the context of so-called "front end" cases, where the policy has been applied to prohibit placement in a CCC at the outset of the prisoner's sentence.  In contrast, a number of courts have upheld the policy as applied to the "back end" situation, such as that presented here, where the Petitioner seeks to increase the period of his CCC placement at the tail end of his sentence.  See Turano v. Winn, Civ. No. 03-40188-EFH (D. Mass., Order of Dismissal dated Jan. 7, 2004); Goldings v. Winn, Civ. No. 03-40161-WGY (D. Mass., Memorandum and Order dated Oct. 23, 2003, appeal docketed, No. 03-2633 (1st Cir. argued May 7, 2004); United States v. Mikutowicz, 2003 WL 21857885 (D. Mass. Aug. 6, 2003); Rothberg v. Winn, 03-CV-11308-RGS (D. Mass. 2003); Kennedy v. Winn, Civ. No. 03-10568-MEL (D. Mass. July 9, 2003).[7]

**A.    The New BOP Policy Is a Correct Application of the Law**

In reviewing an agency's construction of a statute, courts apply the two-pronged test set forth in Chevron USA, Inc. v.  Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  First, a

---

[6]    And see Grimaldi v. Menifee, 2004 WL 912099 (S.D. N.Y. Apr. 29, 2004); Crowley v. Federal Bureau of Prisons, 2004 WL 516210 (S.D. N.Y., March 4, 2004); DiStefano v. Federal Bureau of Prisons, 2004 WL 396999 (S.D. N.Y., March 4, 2004); Colton v. Ashcroft, 299 F.Supp.2d 681 (E.D. Ky., Jan. 15, 2004).

[7]    Copies of these decisions are collected in **Exhibit 5**.

court must determine whether Congress has directly spoken to the precise question at issue. <u>Id</u>. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Id</u>. at 843. Second, if the statutory language is silent or ambiguous, deference is then to be afforded the agency's interpretation if it is based on a "permissible" construction of the statute. <u>Id</u>. While an interpretation that has not been promulgated pursuant to the notice and comment rules of the APA, or reduced to a formal regulation, is not entitled to "full" deference, a permissible interpretation is still entitled to respect. <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995) ("BOP's internal agency guideline . . . is still entitled to some deference, since it is a permissible construction of the statute"); <u>see also</u> <u>Alaska Dept. of Env. Cons. v. Environmental Protection Agency</u>, – U.S. –, 124 S.Ct. 983, 1001 (2004); <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944).

The starting point of analysis is 18 U.S.C. § 3624(c). This section provides:

> **Pre-release custody**. The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

There can be little doubt that this language limits the period for a prisoner's placement in a CCC to the "last 10 per centum" of the prisoner's sentence of imprisonment, "not to exceed six months." It is true that the court in <u>Iacaboni v. United States</u>, 251 F.Supp.2d 1015 (D. Mass. 2003), concluded that § 3624(c) has nothing to do with community confinement but instead merely authorizes the BOP to transfer an offender to <u>home confinement</u> for up to six months of

the final portion of his sentence.  251 F.Supp.2d at 1029-30.  But this conclusion is unsupported

by the statutory language and is discredited by the history of the statute.  When section 3624(c)

was first enacted in 1984, it did not include the sentence regarding "home confinement."  Pub. L.

98-473, 98 Stat. 2009.  That sentence was added by the Crime Control Act of 1990.[8]  Had

Congress intended to limit the application of § 3624(c) to home confinement, it surely would

have said so in 1984.  Accordingly, § 3624(c) applies to CCC placement.

　　　　Some courts have concluded that the temporal limitation of § 3624(c) is subject to a

broader authority granted by 18 U.S.C. § 3621(b).  E.g., Monahan v. Winn, 276 F.Supp.2d at

212.  This latter section grants the BOP the exclusive authority to "designate the place of the

prisoner's imprisonment."  It further provides that the BOP "may designate any available penal or

correctional facility that meets the minimum standards of health and habitability established by

the Bureau . . . that the Bureau determines to be appropriate and suitable, considering . . . [five

specified factors]."  Some district courts have concluded that a "penal or correctional facility"

includes a CCC, and the broad language of this section therefore grants the BOP authority to

place an inmate in a CCC at any time, including for a period longer than the period authorized in

§ 3624(c).  Under this interpretation, the BOP could, in theory, designate a convicted murderer

sentenced to life imprisonment to serve his entire sentence in a halfway house.

　　　　This argument cannot be squared with the plain meaning of § 3624(c) and elemental rules

of statutory construction.  It simply cannot be true that § 3624(c) limits placement in a CCC to

the shorter of six months or the last 10 percent of the prisoner's term, and also be true that §

3621(b) allows placement in a CCC at any time during the prisoner's sentence.  Such an

---

[8]    Pub. L. No. 101-647, 1990 U.S.C.C.A.N. 4789, 4913.    The legislative history of this
amendment is discussed infra.

interpretation of § 3621(b) would effectively render § 3624(c) a nullity.  It is well settled that a provision of a statute will not be read in a way that renders another provision of the same statute superfluous.  Duncan v. Walker, 533 U.S. 167, 174 (2001); Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998).[9]  In addition, "it is a basic principle of statutory construction that a specific statute . . . controls over a general provision . . . ."  HCSC-Laundry v. United States, 450 U.S. 1, 6 (1981). Section 3624(c) is very specific as regards placement of offenders in CCCs.  Section 3621(b), on the other hand, is general.

In Monahan v. Winn, 276 F.Supp.2d 196, 210-11 (D. Mass. 2003), the court argued that sections 3621(b) and 3624(c) accomplished two separate and ostensibly compatible objectives: section 3621(b) *allows* the BOP to designate a prisoner to a CCC at any time during the prisoner's sentence, while section 3624(c) *requires* the BOP to "assure" that the prisoner spends the last part of his sentence (10 percent, not to exceed six months) under pre-release conditions.[10] 276 F.Supp.2nd at 210-211 & n.11.

The fundamental flaw in this argument is that § 3621(b) does not contain the broad grant of authority that some courts have ascribed to it.  Contrary to the view expressed in Monahan, the history of section 3621(b) demonstrates that Congress did not establish a broad discretion in the BOP to place a prisoner in a CCC at any time during the prisoner's term of imprisonment.

---

[9]    And see Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 533 (1995) ("'[W]hen two statutes are capable of co-existence, . . .  it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" (Quoting Morton v. Mancari, 417 U.S. 535, 551 (1974), and Pittsburgh & Lake Erie R. Co. v. Railway Labor Executives' Ass'n, 491 U.S. 490, 510 (1989)).

[10]    Accord Cato v. Menifee, No. 03-Civ. 5795(DC), 2003 WL 22725524 (S.D.N.Y., Nov. 20, 2003).  Contra, United States v. Mikutowicz, 2003 WL 21857885 (D. Mass. Aug. 6, 2003) ("The six month figure is a maximum time within that final ten percent"); Kennedy v. Winn, Civ. No. 03-10568-MEL (D. Mass., July 9, 2003).

Before the Sentencing Reform Act of 1984, 18 U.S.C. § 4082(b), which was the predecessor to §

3621(b), did indeed give the Attorney General broad authority to place a prisoner in a CCC.  It

provided in part that the Attorney General "may designate as a place of confinement any

available, suitable, and appropriate institution or facility . . . ."  18 U.S.C. § 4082(b) (1982).  The

words "penal or correctional" did not appear in this section.  And § 4082(f) provided that, "[a]s

used in this section – the term 'facility' shall include a residential community treatment center."

Id.  But when the law was re-written in 1984, Congress made significant changes.  First,

Congress added the modifying words "penal or correction," so that now the BOP, under the new

§ 3621(b), "may designate any available penal or correctional facility. . ." (emphasis added).

Pub. L. 98-473, Title II, § 212(a)(2), 98 Stat. 2007 (1984).  Second, Congress stripped the

definition of "facility" from the new section 3621.[11]  Id.  Third, a new section 3624(c) was added

to create an express but carefully circumscribed authority in the BOP to place a prisoner in a

CCC for the last ten percent, not to exceed six months, of the prisoner's term of imprisonment.

Id. 98 Stat. 2008.  The only possible explanation for these statutory changes is that Congress

intended to modify the BOP's traditional authority so as to limit the authority to place a prisoner

in a CCC.

This conclusion is also consistent with the larger scheme of the Sentencing Reform Act of

1984.  Placement of an offender in a CCC is expressly authorized as a condition of probation.  18

U.S.C. § 3563(b).  It is also authorized as a condition of supervised release.  See United States v.

Bahe, 201 F.3d 1124 (9th Cir. 2000).  It is not authorized as a permissible part of a term of

---

[11]    A similar definition of "facility" was retained in the substantially-revised version of §
4082, but that section now addresses escape from confinement and sharing of information about
prisoners confined in community treatment centers.  18 U.S.C. § 4082(c).  It is therefore of no
relevance here.

imprisonment.  See 18 U.S.C. §§ 3581, 3582.[12]  Moreover, the U.S. Sentencing Guidelines, which are a congressionally-authorized implementation of the Sentencing Reform Act and thus entitled to substantial deference, parallel this scheme.  The Guidelines clearly indicate that "imprisonment" does *not* include placement in a CCC.  See United States v. Cintrón-Fernández, 356 F.3d 3340 (1st Cir. 2004).[13]  It would be incongruous, to say the least, to interpret § 3621(b) to authorize the BOP to do what is prohibited by the sentencing provisions of Title 18 and the Sentencing Guidelines.  Accordingly, there is no merit to the contention that § 3621(b) authorizes a prisoner's placement in a CCC for longer than the period prescribed by § 3624(c).

Further, the argument advanced by the court in Monahan would in fact effectively negate the temporal limitation of § 3624(c).  The directive of § 3624(c) is a qualified one and does not mandate any pre-release placement or give rise to an enforceable right on the part of the prisoner.  See United States v. Restrepo, 999 F.2d 640, 645 (2nd Cir. 1993) ("the statute does not on its face require the Bureau to ensure that all prisoners participate in such a program, but only to do so if practicable."); United States v. Loughlin, 933 F.2d 786, 789 (9th Cir. 1991) ("Nothing in the language of section 3624(c) mandates that all prisoners pass through a community treatment

---

[12]    Correction and rehabilitation, which are recognized objectives of CCC placement, are appropriate goals of probation and supervised release.  See 18 U.S.C. §§ 3563(b), 3553(a)(2)(D); S. Rep. 98-225 at 124 ("the primary goal of [supervised release] is to ease the defendant's transition into the community . . . , or to provide rehabilitation"), reprinted in 1984 U.S.C.C.A.N. at 3307; and see Johnson v. United States, 529 U.S. 53, 59-60 (2000).  In contrast, "imprisonment is *not* an appropriate means of promoting correction and rehabilitation."  18 U.S.C. § 3582(a) (emphasis added); see S. Rep. No. 225 at 67 n.140, 76, reprinted in 1984 U.S.C.C.A.N. at 3250, 3259.  This further supports the distinction between imprisonment and placement in a CCC.

[13]    Consistent with the overall scheme of Title 18's sentencing provisions, the Sentencing Guidelines authorize placement in a CCC as a condition of probation, USSG § 5C1.1(c)(3), or as a condition of supervised release, USSG § 5C1.1(d)(2).

center en route to free society.").  Consequently (and particularly in the circumstances presented

here), the nature of the "discretion" that the court in <u>Monahan</u> would have the BOP exercise

under section 3621(b) is for all practical purposes identical to that exercised under section

3624(c) – the only difference being the temporal limit on CCC placement.  Thus, the distinction

drawn by the court in <u>Monahan</u> makes no practical sense.  And there is no hint of a congressional

intent to authorize two analytically separate but practically redundant systems for administering

community confinement.[14]  In short, the analysis in <u>Monahan</u>, as well as that in <u>Zucker v.

Menifee</u>, 2004 WL 102779 (S.D. N.Y., Jan 21, 2004), which are cited by Petitioner, should be

rejected.

### B.    The Legislative History Supports the BOP's Position

The legislative history supports the BOP's position.[15]  Section 3581(a) of Title 18 U.S.C.

provides that a person found guilty of any offense "may be sentenced to a term of imprisonment."

In drafting this section, the Senate Judiciary Committee did not follow a recommendation which

would have precluded imprisonment for persons committing the lowest class of crimes.  In the

bill submitted to the Senate floor (later enacted), every offense under the Act could lead to a term

of prison.  S. Rep. 225 at 113, <u>reprinted in</u> 1984 U.S.C.C.A.N. at 3297.  In justifying this

provision, the Committee noted that "the shock value of a brief period *in prison* may have

significant special deterrent effect."  <u>Id</u>. at 114 (1984 U.S.C.C.A.N. at 3297) (emphasis added).

---

[14]    In different contexts, the BOP does distinguish between discretionary CCC placement by the BOP and mandatory CCC residence resulting from a condition of probation or condition of supervised release.  <u>See</u> App. 158-59.

[15]    <u>See</u> <u>Arnold v. United Parcel Service, Inc.</u>, 136 F.3d 854, 858 (1st Cir. 1998) ("If the text is not unambiguously clear, however, we are obliged to turn to other sources to discern the legislature's meaning. One important source, of course, is the legislative history.").

The Committee added that "[a] sentence imposed by a judge pursuant to section 3581 will represent the actual period of time that the defendant will spend *in prison*[.]"  Id. at 115 (1984 U.S.C.C.A.N at 3298) (emphasis added).  See Benton v. Ashcroft, 273 F.Supp.2d 1139 (S.D. Cal. 2003) (upholding the BOP policy change), appeal docketed, 9th Cir. No. 03-56343.   Thus, in considering and voting on the Senate bill, the Committee apparently did not contemplate that an offender sentenced to "imprisonment" would be incarcerated in any facility other than a prison, even if he committed only a minor infraction.

The court in Iacaboni v. United States, 251 F.Supp.2d 1015 (D. Mass. 2003), distinguished above, in discussing the meaning of § 3621(b), relied on an excerpt from the Senate Judiciary Committee report, which noted that "[p]roposed 18 U.S.C. § 3621(b) follows existing law . . . ."  The court found in this excerpt an intent that the BOP retain its preexisting authority to place prisoners in CCCs.  251 F.Supp.2d at 1025, quoting from S. Rep. No. 225 at 141-42. Not only did the district court fail to recognize the significance of the 1984 statutory changes (discussed above), but the court omitted important language from its quote.  The full quote from the Judiciary Committee states: "Proposed 18 U.S.C. § 3621(b) follows existing law *in providing that the authority to designate the place of confinement for federal prisoners rests in the Bureau of Prisons*."  Id. at 141, reprinted in 1984 U.S.C.C.A.N. at 3324 (omitted portion in italics).  A footnote at this part of the Committee Report cites to McIntyre v. United States, 271 F. Supp. 991, 999-1000 (S.D. N.Y. 1967), aff'd 396 F.2d 859 (2nd Cir. 1968).  In that case the court ruled that a federal court has no power to order a term of imprisonment to run concurrently with a state sentence, since that would be tantamount to designating the prisoner's place of confinement, which is a power entrusted to the Attorney General, not the sentencing court.   In its full context, the Judiciary Committee's statement is simply an affirmation of the fact that the BOP, not the

sentencing court, has exclusive power to designate the place of imprisonment.  It says nothing about whether § 3621(b) encompasses the authority to place a prisoner in a CCC.

As discussed above, the sentence in 3624(c) regarding "home confinement" was added by the Crime Control Act of 1990.[16]  As introduced, the bill originally included amendments to Title 18 meant to enlarge BOP's power "to place inmates in community corrections programs and home confinement."  H.R. Rep. 101-681(I), at 73 (Sept. 5, 1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6477.  Section 1404 of Title XIV would have amended 18 U.S.C. § 3621(b) to strike the phrase "penal or correctional facility that meets minimum standards of health and habitability established by the Bureau," and replace it with "suitable, and appropriate institution, facility, or program, and where appropriate, to a home detention program."  H.R. 5269, 101st Cong. (1990), 136 Cong. Rec. 27, 316, 27,330 (Oct. 3, 1990) (reproduced at App. 72).[17]  The report of the House Judiciary Committee explained:

> Sections 1403 and 1404 address the Federal Bureau of Prisons' authority to place inmates in community corrections programs and home confinement.  Currently, the Bureau of Prisons can only place an inmate in a Community Correction Center for up to six months or for the last 10 percent of his or her sentence, whichever is shorter.  Section 1403 would authorize the Bureau of prisons to place certain non-violent offenders in community facilities for longer time periods at the end of their sentences so that they can better readjust to society.
> Section 1404 restores the Bureau of Prisons' previously existing authority to designate an appropriate place for offenders to serve their sentences, including Community Correction Centers or home confinement.

---

[16]    Pub. L. No. 101-647, 1990 U.S.C.C.A.N. 4789, 4913.

[17]    Sections 1403 and 1404 of the bill (H.R. 5269), would have abolished the limit on the length of the pre-release transition period in 18 U.S.C. § 3624(c) (six months or 10 percent of the sentence, whichever is shorter) and authorized the BOP to place prisoners in community or home confinement for longer periods.  Id.

H.R. Rep. 101- 681(I) at 140, reprinted in 1990 U.S.C.C.A.N. at 6546 (reproduced at App. 77.

Plainly, there would have been no need to "restore" this power if BOP had it in the first place.

The reference to "previously existing" is also consistent with the point made above that, after the

Sentencing Reform Act recodified 18 U.S.C. § 4082(g) at section 3621(b), and deleted the former

allowance for BOP to place inmates in "facilities" (including in a "residential community

treatment center"), that deletion did in fact strip BOP of a pre-existing power to make such

placements.[18]

The amendment was opposed by the Department of Justice and certain members of the

House.  The latter noted that proposed Section 1404 "would permit the Bureau to place drug

felons in treatment programs, thus endangering the community.  The American public wants

dangerous felons in jail, not in therapy programs or home detention."  H.R. Rep. 101-681(I) at

338, reprinted in 1990 U.S.C.C.A.N. at 6618 (Dissenting Views).  During the ensuing floor

debate on H.R. 5269, one of the Committee dissenters, Representative McCollum, offered an

amendment deleting sections 1403 and 1404 and retaining the existing limits on BOP discretion

regarding community confinement, but adding a sentence expressly stating that home

confinement was permissible during the six-month-ten-percent release period.  Representative

McCollum explained his amendment, stating:

> My amendment would give them that opportunity to allow some
> home confinement with or without monitoring by telephonic or

---

[18]    These conclusions find further support elsewhere in the House Report, where the
Judiciary Committee noted: "Section 1404 amends 3621(b) of title 18, United States Code, to
permit the Bureau of Prisons to assign inmates to any 'suitable, and appropriate institution,
facility, or program, and where appropriate, to a home detention program.'  Currently, the Bureau
of Prisons can only confine inmates who committed offenses after November 1987, in penal or
correctional facilities, except as provided in 18 U.S.C. section 3624."  H.R. Rep. 101-681(I) at p.
144, reprinted in 1990 U.S.C.C.A.N. at 6550.

electronic signaling devices.  The reason I am offering this amendment is because in the language of the bill as it is now out here before us, there has been a concern I have had for some time that we are giving a whole lot more authority to the Bureau of Prisons than we really ought to.  I do not think that was anyone's intent.  The language in the bill, without being amended, would have effectively allowed the Director and the Bureau of Prisons to release any prisoner for any length of time under home custody or whatever, so they would not have had to have served a day in prison.

136 Cong. Rec. 27587-88 (Oct. 4, 1990).[19]  Representative McCollum also explained that his proposed provision authorizing home confinement was "in conformity with current law" – thus suggesting that he believed the BOP already had authority to order home detention during the transition period.  Id.  The McCollum amendment was approved by the House on a voice vote, and the original language expanding the BOP's authority was thus defeated.  Id. at 27588.  The more limited amendment was subsequently incorporated into the final bill that was enacted.  See Pub. L. 101-647, § 2902, 104 Stat. 4913.  This legislative history strongly supports the conclusion that § 3624(c) reflects a strict limitation on the BOP's authority to designate prisoners to community confinement centers.

C.     The BOP's Change in Procedure Did Not Violate the Administrative Procedure Act ("APA")

There is no merit to Petitioner's assertion that the change in BOP practice was made in violation of the notice and comment requirements of section 553 of the APA, 5 U.S.C. § 553.  Petition at pp. 2, 5.  The notice and comment provisions of the APA apply "only to so-called 'legislative' or 'substantive' rules; they do not apply to 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.'"  Lincoln v. Vigil, 508 U.S. 182,

---

[19]     Also at 136 Cong. Rec. H8842-04, *H8917, 1990 WL 146287 (Oct. 4, 1990).

196 (1993) (citing 5 U.S.C. § 553(b)(3)(A)).  Interpretive rules "advise the public of the agency's construction of the statutes and rules which it administers," <u>Shalala v. Guernsey Memorial Hospital</u>, 514 U.S. 87, 99 (1995) (internal quotations omitted), whereas legislative rules create rights and obligations that are "not already outlined in the statute itself."  <u>Warder v. Shalala</u>, 149 F.3d 73, 80 (1st Cir. 1998); <u>see</u> <u>Syncor Int'l</u> <u>Corp. v. Shalala</u>, 127 F.3d 90, 94 (D.C. Cir. 1997).

Notably, the BOP's past practice of placing some inmates in CCCs for longer than the six-months-ten-percent period, was described in a BOP Program Statement that itself was not the product of notice and comment and was not a "legislative" or "substantive" rule.  <u>See</u> <u>Reno v. Koray</u>, 515 U.S. at 61 (BOP Program Statement concerning credit for time spent at community treatment center "is akin to an 'interpretive rule' that "do[es] not require notice and comment'"); <u>see also</u> <u>Gunderson v. Hood</u>, 268 F.3d 1149, 1154 (9th Cir. 2001) (BOP program statement relating to eligibility for early release was an "interpretive" rule).  The December 2002 change in BOP procedure was simply a revision to this Program Statement and similarly is not subject to notice-and-comment rulemaking.[20]

More significantly, the BOP's policy change does not create any new law or stake out any new ground that is not already set forth in the statute itself.  The court's decision in <u>Warder</u> is therefore controlling here.  There the court held that the administrative ruling at issue was an interpretive rule not subject to the APA's notice and comment requirements because "[t]he Ruling does not stake out any ground 'the basic tenor of which [was] not already outlined in the law itself.'"  <u>Id.</u> at 80-81, <u>quoting</u> <u>La Casa Del Convaleciente v. Sullivan</u>, 965 F.2d 1175, 1178

---

[20]    Unlike the prior BOP practice, the new practice is binding on BOP employees, but only by force of the governing statute, 18 U.S.C. § 3621(b) and U.S.S.G. § 5C1.1, not by force of any agency regulation.  <u>See</u> <u>Warder</u>, 149 F.3d at 82-83 ("The fact that the Ruling binds HCFA carriers and ALJs is entirely consistent with its status as an interpretative rule.").

(1st Cir. 1992).   As in <u>Warder</u>, the BOP's policy directive "does not create any new law or extra-statutory obligation," or "change an existing law or regulation."  <u>See</u> <u>Benton v. Ashcroft</u>, 273 F.Supp.2d at 1147.  It simply corrects past error and applies existing law.

The fact that the BOP procedure change affects numerous inmates does not transform it into a "legislative" rule.  That a policy has general application merely defines it as a "rule" under APA, <u>see</u> 5 U.S.C. § 551(4); it does not answer the question whether a rule is legislative or interpretive.  In <u>Warder</u> the court observed that a rule's public impact is of little importance in determining whether the notice and comment requirement applies.  149 F.3d at 80 n.6 (noting that the Supreme Court "wholly ignored" the public impact in <u>Guernsey</u> and <u>Reno v. Koray</u>).

Nor is there any merit to the argument that notice and comment is required because the new BOP practice represents a departure from past BOP practice.  The court in <u>Warder</u> rejected such an argument, stating, "The legal point is clear enough: in order for notice and comment to be necessary, 'the [later] rule would have to be inconsistent with another rule having the force of law, not just any agency interpretation regardless of whether it had been codified."  <u>Id</u>. at 81, <u>quoting</u> <u>Chief Probation Officers v. Shalala</u>, 118 F.3d 1327, 1337 (9th Cir. 1997).  In short, there is no procedural defect in the BOP procedure change.[21]

## C.    The BOP Procedure Change Is Not Impermissibly Retroactive

Petitioner alleges that his CCC calculation should be governed by the BOP's previous policy because he was sentenced and in custody before the policy change.  Petition at pp. 2-3, 4-5-6.  Petitioner is incorrect both factually and as a matter of law.  Factually, his first sentence was

---

[21]    The Government respectfully disagrees with the decisions in <u>Iacaboni</u>, 251 F. Supp. 2d at 103-40, and <u>Monahan</u>, 276 F.Supp.2d at 212-15, holding otherwise.  <u>And see</u> <u>Mallory v. United States</u>, 2003 WL 1563764 (D. Mass. 2003) (Woodlock, J.)

imposed in March of 2001, and his second sentence was imposed in August of 2003 -- not in

1991 as stated in his Petition.  See **Scannell Dec., Documents 1b and 1c.**  Thus, at a minimum,

notwithstanding the legal defects in his argument, his second sentence occurred after the BOP

policy change in December 2002, and is fully governed by the new policy.

As a legal matter, a law is impermissibly retroactive, or violates the Ex Post Facto Clause,

when it punishes behavior that was not punishable at the time it was committed or increases the

punishment beyond the level imposed at the time of commission.  U.S. Const., art. 1, § 10, cl. 1;

see Garner v. Jones, 529 U.S. 244, 249-250 (2000); Collins v. Youngblood, 497 U.S. 37, 42,

(1990).[22]  "[T]he focus of the ex post facto inquiry is not on whether a  . . . change produces some

ambiguous sort of 'disadvantage,' . . . but on whether any such change alters the definition of

criminal conduct or increases the penalty by which a crime is punished."  California Department

of Corrections v. Morales, 514 U.S. 499, 506 n.3 (1995).

A new rule, regulation, or policy change that merely corrects an agency's erroneous

interpretation of pre-existing law, even if it was a reasonable one, does not offend the Ex Post

Facto Clause.  See, e.g., Metheney v. Hammonds, 216 F.3d 1307, 1310-1311 (11th Cir. 2002)

(collecting cases).  The clause "does not prohibit . . . the correction of a misapplied existing law

which disadvantages one in reliance on its continued misapplication."  Stephens v. Thomas, 19

F.3d 498, 500 (10th Cir. 1994) (finding no Ex Post Facto violation when department of

corrections stopped applying good-time-credit statute to prisoners with life sentences after state

attorney general informed department that this application was prohibited by statute); accord

---

[22]    It is not clear that the Ex Post Facto Clause even applies to an Executive Branch
agency's interpretation of a statute, particularly where the interpretation creates no new law but
simply corrects a past erroneous interpretation.  Cf. Rogers v. Tennessee, 532 U.S. 451, 462
(2001) ("the Ex Post Facto Clause does not apply to judicial decisionmaking").

Cortinas v. United States Parole Comm'n, 938 F.2d 43, 46 (5th Cir. 1991); Glenn v. Johnson, 761 F.2d 192, 194-95 (4th Cir. 1985); Caballery v. United States Parole Comm'n, 673 F.2d 43, 47 (2d Cir. 1982).  "The *ex post facto clause* of the Constitution does not give [a prisoner] a vested right in . . . an erroneous interpretation" of law.  Mileham v. Simmons, 588 F.2d 1279, 1280 (9th Cir. 1979).

Here, the BOP's procedure change did not change the applicable law.  Rather, the change merely corrected an erroneous interpretation by the BOP of section 3624(c), which since 1984 has imposed a temporal limit on the BOP's authority to designate an inmate serving a term of imprisonment to a halfway house.  Accordingly, the Ex Post Facto clause is not applicable here. See Adler v. Menifee, 293 F.Supp.2d 363, 367 (S.D. N.Y. 2003); United States v. Pena, 2003 WL 21197024, *3 (W.D. N.Y. 2003); Rothberg v. Winn, 03-CV-10568 (D. Mass. 2003) (Stearns, J.).

Furthermore, the BOP procedure change has not increased the punishment the Petitioner will receive for his crime.  Instead, it has only potentially changed the place where he will serve a portion of the last six months of his sentence of imprisonment.  In Dominique v. Weld, 73 F.3d 1156 (1st Cir. 1996), the court held that changes in state policies and regulations which caused the plaintiff to be terminated from a work release program did not violate the Ex Post Facto Clause.  73 F.3d at 1161-62.  Without deciding whether the Ex Post Facto Clause was applicable at all, the court concluded that the changes did not increase the penalty by which the plaintiff's crime was punishable, but simply changed the conditions of his confinement.  Id. at 1163.[23]  The court's decision in Dominique is applicable here, and the Petitioner's claim that the BOP's new

---

[23]    Accord United States v. Kramer, 2003 WL 1964489 *4-6 (N.D. Ill. 2003).

policy has been applied impermissibly and retroactively to his sentence should be rejected.

## II.
## THE BUREAU OF PRISONS' CALCULATION OF PETITIONER'S GOOD CONDUCT TIME IS CORRECT PURSUANT TO 18 U.S.C. § 3624(b)

Petitioner asserts that the BOP incorrectly calculates his Good Conduct Time ("GCT"). Petitioner alleges that, under 18 U.S.C. § 3624(b), he is entitled to 223.2 days of GCT, whereas, under the BOP's interpretation of the statute, he gets 208 days. Petitioner's assertion is incorrect.

### A.    The Governing Statute; the BOP Regulation; and Program Statement 5880.28

The federal statute governing GCT credits under the Sentencing Reform Act for all offenses committed after November 26, 1996, appears at 18 U.S.C. § 3624(b). The statute provides:

> (b) Credit toward service of sentence for satisfactory behavior.--
>
> (1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . .  Credit that has not been earned may not later be granted. . . . [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence. . . .

The implementing BOP regulation at 28 C.F.R. § 523.20 provides:

> **Good conduct time.**
>
> . . . Pursuant to 18 U.S.C. 3624(b), as in effect for offenses committed on or after April 26, 1996, the Bureau shall consider whether the inmate has earned, or is making satisfactory progress (see § 544.73(b) of this chapter) toward earning a General Educational Development (GED) credential before awarding good conduct time credit.
> (a) When considering good conduct time for an inmate serving a sentence for an offense committed on or after April 26, 1996, the Bureau shall

award:

      (1) 54 days credit for each year <u>served</u> (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma; or

      (2) 42 days credit for each year <u>served</u> (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma.

(b) The amount of good conduct time awarded for the year is also subject to disciplinary disallowance (see Tables 3 through 6 in § 541.13 of this chapter).

28 C.F.R. § 523.20 (emphasis added).

The application of the statute and BOP regulation is explained in a BOP internal guideline, Program Statement 5880.28, <u>Sentence Computation Manual CCCA</u> ("PS 5880.28") (relevant portions are included in the **Scannell Dec., Document 1f**). Consistent with the statute and regulation, PS 5880.28 provides that, in determining credit to be applied to the last year or portion of the last year, the 54 days of credit per year earned by the model prisoner shall be prorated to 0.148 days of credit for every actual day served during good behavior (54/365 = 0.148). <u>Id</u>.[24]

Under the Petitioner's interpretation of § 3624(b), he asserts that he should get 54 days of GCT credit for each 12 month increment of his sentence. Under this formula he calculates that he should receive 54 (GCT days) x 4.3 (years of sentence) for a total of 232.2 days of GCT. Petition at pp. 3 and 9. Petitioner's theory is flatly inconsistent with the statutory requirement that credit be given "<u>at the end</u> of each year of the prisoner's term of imprisonment" (emphasis

---

[24] The Program Statement sets forth a mathematical model that is straight-forward in concept. It establishes a series of computations that adjust for the fact that each additional day of GCT credit results in one day less of time served. The days of credit and days of time served each need to be adjusted until the ratio of credit to time served (0.148) is proper. The calculations applicable to the Petitioner are set forth in **Exhibit 6**.

added), and that "credit for the last year or portion of a year of the term of imprisonment shall be

prorated. . . ." Stated another way, if, as the Petitioner asserts, "term of imprisonment" were

interpreted to mean "term of the sentence," it would be impossible for the BOP to give credit "at

the end of each year of the prisoner's term of imprisonment," since the petitioner would, under

his formula, no longer be under BOP custody during his last year. Petitioner's formula

disregards the annual calculation requirement of the statute and therefore yields an inaccurate

GCT calculation.

  The plain meaning of § 3624(b) supports the BOP's position. The statute sets forth the

yearly occasion for the determination of each year's GCT credit: "at the end of each year of the

prisoner's term of imprisonment." 18 U.S.C. § 3624(b). At that time, the BOP is to examine the

prisoner's record of conduct over the year past and decide whether that prisoner has shown

"exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1).

Thus, the GCT statute operates on a yearly, ongoing basis, as time is served, until the sentence is

satisfied. It logically follows that if a prisoner cannot receive their 54 days of GCT until after

each year of the term is complete, then a prisoner cannot receive any GCT for time not actually

served.

  The statute also provides, "Credit that has not been earned may not later be granted."

Thus, the language clearly indicates that GCT credit must be earned. Petitioner's interpretation

runs afoul of the plain language of the statute. If GCT credit were awarded based on length of

sentence, as Petitioner urges, credit would be awarded for time not actually spent in prison, in

other words, credit given that was never actually earned.

  The statutory language is not ambiguous. But if it is, the BOP's interpretation is entitled

to substantial deference. It is set forth in a duly promulgated regulation, and consequently is

entitled to full deference under <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council</u>, 467

U.S. 837 (1984).  <u>See</u> <u>Pacheco-Camacho v. Hood</u>, 272 F.3d 1266, 1270 (9th Cir. 2001), <u>cert.

denied</u>, 535 U.S. 1105 (2002).  Under <u>Chevron</u>, the BOP's regulation is to be upheld if it is

"based on a permissible construction of the statute."  467 U.S. at 843.  The discussion above

demonstrates that the BOP's interpretation meets this standard.

The only two circuit courts to have considered the issue raised here have upheld the BOP

position.  In <u>Pacheco-Camacho</u> the Ninth Circuit rejected substantially the same argument made

by the Petitioner here.  The court noted that the petitioner's argument in that case would "confer

upon the prisoner a bonus during his last year of imprisonment."  272 F.3d at 1269.  After

examining the statutory language, the court concluded, "Nothing in the statute clearly suggests

that Congress intended to give the prisoner such a windfall in his last year."  <u>Id</u>.  The court

further concluded that the BOP's implementing regulation was entitled to <u>Chevron</u> deference and

that it reflected a permissible interpretation of the statute.  <u>Id</u>. at 1270-1271.[25]

The Court of Appeals for the Sixth Circuit, in two unpublished opinions, has also upheld

the BOP's approach to determining GCT credits.  <u>See</u> <u>Brown v. Hemingway</u>, 53 Fed. Appx. 338,

2002 WL 31845147 (6th Cir. 2002) ("The Bureau's interpretation is reasonable in light of the

statutory language."); <u>Williams v. Lamanna</u>, 20 Fed. Appx. 360, 2001 WL 1136069 (6th Cir.

2001) ("The statute clearly states that good conduct time is awarded on time served by the

---

[25]      The <u>Pacheco-Camacho</u> court rejected a claim that the rule of lenity compelled
Petitioner's interpretation.  The rule of lenity resolves ambiguities in a criminal defendant's
favor; however, it does not apply when, as in this instance, the question has been addressed by a
regulation validly adopted through the rulemaking process.  272 F.3d at 1271-72.

inmate, not on the time that might potentially be served by the inmate.").[26]  Finally, in a very recent decision dated June 2, 2004, the United States District Court for the Northern District of New York, in Pasciuti v. Drew, No. 9:04-cv-043 (LEK), ruled that the Bureau of Prison's method of determining Good Conduct Time ("GCT") credits, as set forth in Program Statement 5880.28, is not only a reasonable interpretation of 18 U.S.C. § 3624(b), but, in fact, is the only logical interpretation of the statute.  Id. at 9.  A copy of the decision is attached as **Exhibit 8**.

The Petitioner relies on one case to the contrary, White v. Scibana, 2003 WL 23171593 (W.D. Wis. 2003).  The Respondent suggests that the White opinion is not well reasoned.  The court in White gives no consideration to the statutory language that credit be established "at the end of each year of the prisoner's term of imprisonment," and offers no analysis of how, under the Petitioner's theory, "credit for the last year or portion of a year . . . shall be prorated . . . ."  The court in White also fails to acknowledge the statutory command that "credit that has not been earned may not later be granted."  Accordingly, White should not be followed.  The BOP's calculation of Petitioner's GCT credit is correct, and the Petitioner's position without merit.

---

[26]     Pursuant to Sixth Circuit Rule 28(g), copies of these opinions are attached as **Exhibit 7.**  Several district court decisions are in accord.  Martinez v. Wendt, 2003 WL 22456808 (N.D. Tex. 2003); Webb v. Deboo, et al., Case No. 3:03CV961, Dorsey, J., Ruling and Order dated Sept. 22, 2003 (D. Ct.) (Exhibit 4); De Gerolamo v. White, Case No. 03CV139, Wolfson, F., Opinion Dated May 20, 2003 (D. N.J.) (Exhibit 5); see also Montalvo v. United States, 174 F.Supp.2d 10, 14 (S.D.N.Y. 2001).

## CONCLUSION

For the foregoing reasons, the Petitioner's Petition fails to state a claim upon which relief can be granted, and, accordingly it should be dismissed.

Respectfully submitted,

For the Respondent
DAVID L. WINN

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/Anton P Giedt
        Anton P. Giedt
        Assistant U.S. Attorney
        1 Courthouse Way
        Boston, MA 02210
        617-748-3309 (Voice)
        617-748-3971 (Fax)
        anton.giedt@usdoj.gov
        BBO No.:  563928

---

**LOCAL RULE 7.1(A)(2) CERTIFICATE**

I, Anton P. Giedt, Assistant U.S. Attorney, respectfully request leave from compliance with Local Rule 7.1(A)(2) as Petitioner is incarcerated, acting *pro se*, and is not represented by counsel.

/s/ Anton P. Giedt
Anton P. Giedt
Assistant U.S. Attorney

---

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                          Boston, Massachusetts
                                                     DATE: July 13, 2004

I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the Petitioner by First Class Mail.

/s/ Anton P. Giedt
Anton P. Giedt
Assistant U.S. Attorney

---

**PETITIONER:**                          **AGENCY COUNSEL:**
John Tyler -Register Number 10466-036     Patrick Ward
Prisoner Mail                             Federal Medical Center Devens
Federal Medical Center Devens             Box 880
P.O. Box 879                              Ayer, MA 01432
Ayer, MA 01432