UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| John Tyler,<br>    Petitioner, | 2004 JUL 21 P 12: 42<br>U.S. DISTRICT COURT<br>DISTRICT OF MASS |
| v. | Civil N°.: 04-40101-DPW |
| Department of Justice,<br>Harley Lappen, et al,<br>Director,<br>Bureau of Prisons,<br>&<br>David L. Winn, et al,<br>Warden.<br>        Respondent(s). | |

## PETITIONER'S RESPONSE TO THE RESPONDENT'S MOTION TO DISMISS

Now comes Petitioner, John Tyler, acting Pro Se, in the above captioned action requesting leave to this Honorable Court to respond to the Respondent's motion to dismiss and request to remove Director Harley Lappen from complaint.

Petitioner asserts that Respondent Director Harley Lappen should not be removed whereas, he is the Director of the Bureau of Prisons for the Department of Justice and is in charge of all prisons and their Warden's whom work under the direction of the Director Harley Lappen in their performance of their duties as Wardens in the Bureau of Prisons.

As a Director, Harley Lappen is the overseer of the performance and duties of all prisons and their Warden's and the policies that are set forth for them to follow, and should be apart of this instant action.

The Bureau of Prisons is responsible for the care and confinement of offenders who are committed to its custody, the Director is the "Head" of this Department of the Executive branch for the Department of Justice naming Harley Lappen as Director.

The Petitioner named Harley Lappen, Director and David L. Winn, Warden as Respondent(s) to the herein claims before this Honorable Court and whereas, these claims are the affect of Bureau of Prisons policies and procedures and not just institutional policies and procedures warrants the Director to remain as a part of this claim.

Respondent(s) assert that the only proper Respondent in this instant action is only David L. Winn, Warden of F.M.C. Devens where the Petitioner is currently in custody, using Padilla v. Rumsfeld, --U.S.--(June 28, 2004).

In Padilla, petitioner who named President George W. Bush, and Donald Rumsfeld, Secretary of Defense, whereas, the President did not have ongoing involvement in the custody of petitioner the President was and should have been removed from the instant action, but in this instant action whereas, Harley Lappen Director of the Bureau of Prisons is responsible for the day-to-day operations of the policies and the actions and activities of the prisons and Wardens there under. Rumsfeld is the Secretary of Defense who oversees the day-to-day operations of the Defense Department, Harley Lappen is the Director of the Bureau of Prisons who oversees the day-to-day operation of that Executive branch. See: Padilla v. Rumsfeld, 233 F.Supp.2d 564, 352 F.3d 695, 124 S.Ct. 482, 158 L.Ed.2d 488 --U.S.--(June 28, 2004).

Under title 5 U.S.C. §101, Executive departments, the Executive departments are...The Department of Justice..., §301 Department Regulations, the "Head" of an executive department... may prescribe regulations for the government of his department, the conduct of its employees... In this instant Harley Lappen.

Whereas, the policy and the procedure of the Bureau of Prisons are at question in this instant action then therefore, the head of this department should be named in this instant action.

Respondent(s) assert that the Petitioner has not exhausted administrative remedy, even though the Petitioner has asserted the ~~the~~ administrative remedy would be futile in this instant action whereas, he will receive the same answer with no relief from the Respondent(s). This Honorable Court may stay this Petitioner's instant action if it determines that such is necessary pursuant to 42 U.S.C. §1997(e).

Petitioner has file his administrative remedy and is currently at the Regional level whereas, he has received no relief from the institutional level in this instant action before this Honorable Court. See: Exhibits A, B, & C.

In Monahan v. Winn, 276 F.Supp.2d 197, the Honorable Nancy Gertner for the First Circuit has ruled that the administrative remedy would be futile in this such action allowing the 2241 as the proper way to proceed in this instant action such as this one.

Whereas, this is not an action for monetary damages, but for procedural default this Honorable Court can proceed in this instant action.

Respondent also asserts the policy utilized by the Federal Bureau of Prisons("BOP") prior to a memorandum issued by the Office of Legal Counsel("OLC") was inconsistant with 18 U.S.C. §3621(b), §3624(c) and the U.S. Sentencing Guidelines, and therefore unlawful, however, this can only be reasoned if the BOP, as part of the Executive branch of government, is allowed to illegally usurp the powers of the legislative, by rewriting the law, and the judicial, by appling its own interpretation of the law, branches of government.

First, Respondent(s) cites 18 U.S.C. §3624(c) which states inpart, in completely unambiguous language, "[t]he authority provided by subsection may be used to place a prisoner in home confinement." The very first sentence of the paragraph following the cite, attempts to rewrite the statute by stating "for a prisoner's placement in a CCC."

The language of §3624(c) could not have been more clearer. "The authority provided by this subsection may be used to place a prisoner in [home confinement]," (emphasis added). This is not a paraphrase or quote of partial sentence. It is one complete sentence reflecting one complete thought. No where in §3624(c) is CCC mentioned or even referred to.

As part of the "two pronged test" Respondent(s) cited from <u>Chevron USA, Inc. v. Natural Res. Def. Council</u>, Inc., 467 U.S. 834, 842(1984), "If the intent of Congress is clear, that the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Again, the only way the one complete sentence could ever be construed as anything, but unambiguous is if the BOP is allowed to illegally

-4-

rewrite the statute and place the specific term of "home confinement" with CCC.

Respondent(s) cites <u>Iacaboni v. United States</u>, 251 F.Supp.2d 1015(D.Mass. 2003), which concludes that §3624(c) has nothing to do with CCC, but rather authorizes the BOP to transfer an offender to home confinement for up to the lesser of the last ten percentum of the sentence or six months. The Respondent argues that this conclusion is "unsupported" and "discredited" by the statutory language and history of the statute respectively, because the complete sentence regarding home confinement was not part of the original 1989 statute, but rather added by the Crime Control Act of 1990, he also assumes that "[h]ad Congress intented to limit the application of §3624(c) applies to CCC placement."

The Respondent(s) assumption is wrong in three parts, first and foremost, it is a clear violation of the separation of powers intent of the Constitution for the Executive, or any subdivision therein, to interpret the intent of Congress. Second, it is a complete failure of the Respondent(s) to not see our system of statutory laws as an ever-changing, ever fine tuning process. And lastly, the Respondent(s) once again substitutes CCC where Congress wrote "home Confinement," to fit their own means.

Respondent(s) then moves their argument to 18 U.S.C. §3621(b), which they say has broader authority than §3624(c). Respondent(s) states "this...section grants the BOP the exclusive authority to designate the placement of the prisoner's imprisonment."[1] Once again, Respondent(s) is trying to illegally rewrite the statute.

---

[1] 18 U.S.C. §3621(b), actually reads "The Bureau of Prisons **shall** designate the

Respondent(s) states that some district courts have concluded that a "penal or correction facility" includes a CCC, and broad language of this section therefore grants the BOP authority to place an inmate in a CCC at anytime, including a period longer than the period authorized in §3624(c). However, Respondent(s) again rewrites §3624(c), to read CCC instead of home confinement.

The example provided by the Respondent(s) that a convicted murderer (which has nothing to do with the Petitioner) sentenced to life imprisonment could possibly serve the entire sentence at a CCC is not valid in that it fails to demonstrate the application of the "[Five specified Factors]." Which Respondent(s) intentionally omitted.

Respondent(s) argument that §3624(c) would be nollified by §3621(b), because the latter allows more time in a CCC than the former is only a concern when the phrase "home confinement" is illegally read as CCC. If one were to read §3624(c) and §3621(b), in the unambiguous language in which they are written, one can correctly conclude that an inmate sentenced to 10 years of imprisonment could begin his sentence at a Federal Corrections institute and over time, through good behavior, end up spending 6 years in a CCC as provided for by §3621(b) and finish his sentence with six months home confinement as provided by §3624(b).

---

1.cont. place of the prisoner's imprisonment," shall as defined in Black's Law Dictionary 7th Edition means "the duty to" or more broadly "required to" whereas "Exclusive authority" implies a sole or reserved authority as used by the Respondent(s). In fact, there is no exclusive authority written in this statute and should not be rewritten by the Respondent(s) whereas, they are not Congress.

With regard to Respondent(s) reference to history of the law, the fact that the term "facility" was defined in the old law 18 U.S.C. §4082(f), and was stripped in the section 3621 is because there is an obvious ambiguity in the term "facility" that Congress knew needed more definition. Whereas, the phrase, added by Congress under the Sentencing Reform Act of 1984, "penal or correction" facility is unambiguous in meaning and clearly applies to **Community Correction Center**. [2] That the Respondent(s) once again replaced home confinement with CCC is fatal to their argument. They states "Third, a new section 3624(c) was added to create an express, but carefully circumscribed authority in the BOP to place a prisoner in a CCC..." Therefore, their conclusion that Congress intended to modify the BOP's authority in placing prisoners in CCC is invalid.

Petitioner believes it more likely that Congress intended to add a provision to allow home confinement to the options available in accordance with title 18 U.S.C. §3624(c).

Petitioner re-assert that on the GTC simple math will determine that fact as to whether 54 days are being provide as set forth by statute.

### CONCLUSION

Wherefore, the reasons set forth in the original 2241 and herein this response the Petitioner rely on this Honorable Courts good judgement in the interest of justice in a fair and just verdict to the Petitioner's claims.

---

[2] Respondent(s) has utilized the term "halfway house" as well as "CCC" but has intentionally avoided the phrase "Community Correction Center" because of its obvious relationship to the phrase "penal or correction" center.

Respectfully submitted on this 21st day of July, 2004.

> John Tyler
> 10466-036 J-A
> F.M.C. Devens
> P.O. Box 879
> Ayer, MA 01432-0879
>
> Petitioner / Pro Se

## PROOF OF SERVICE

I, John Tyler, certify that I have mailed via U.S. Postal Service a copy of the herein response to the Respondent(s) at the United States Attorneys Office, One Courthouse way in Boston, Mas, through the institutional legal mail.

U.S. DEPARTMENT OF JUSTICE                                        REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons ~366~
ISSUED 5/26/04

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Tylor   John_____   __10466-036__   __J-B__   __F.M.C. Devens__
       LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.       UNIT        INSTITUTION

Part A- INMATE REQUEST

I was sentence to 52 months imprisonment and I am due to receive my halfway house on July 28, 2004, but I am being told that I have been approved for only 30 days this does not afford me a enoff time to adjust to the community as statute states. Please provide me with a complete outline as to why my 4 month date has now been cut down to only 30 days, I am to go to Pharos House in Maine to which I have already received my Resident agreement. I am intitle to my 10% date along with 208 days of good time credit and would like a clear reason as to why I am unable to receive such.

__5/25/2004__                                __John Tylor__
      DATE                                   SIGNATURE OF REQUESTER

Part B- RESPONSE

RECEIVED MAY 2 8 2004

RECEIVED JUN 10 2004
FMC DEVENS ~WARDEN'S~ OFFICE

_____                              _____
      DATE                                   WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                   CASE NUMBER: 336843-F2

                                             CASE NUMBER: _____

Part C- RECEIPT   Petitioner Exhibit A.

Return to: _____   _____   _____   _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____      ⬟           _____
   DATE                          RECIPIENT'S SIGNATURE (STAFF MEMBER)
                                                                    BP-229(13)
                                                                    APRIL 1982

**FEDERAL MEDICAL CENTER, DEVENS, MASSACHUSETTS**
**RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #336843-F2**

This is in response to your Request for Administrative Remedy in which you request to be informed as to why you did not receive your Community Correction Center (CCC) placement date on July 28, 2004, and instead are only being approved for thirty days CCC placement.

Investigation of your complaint revealed the following: Your sentence computation reflects a 53 month and 2 day term of imprisonment beginning on March 28, 2001. Your projected release date is December 7, 2004, and your pre-release preparation eligibility date is July 21, 2004. Your Unit Team at LSCI Allenwood prepared a halfway house packet for you with the recommendation of a July 21, 2004 placement into a Community Corrections Center. It was forwarded to the Community Corrections Office in Boston, Massachusetts for review.

Pursuant to Program Statement 7310.04 Community Correction Center (CCC) Utilization and Transfer Procedure, "The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten percentum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community."

Based upon the seriousness of your offense, the CCM has determined that 30 days is appropriate in your case and that you shall be designated for a 30 day placement effective November 8, 2004.

Based on the information above, your Request is for Administrative Remedy is denied.

If you are not satisfied with this decision, you may appeal to the Regional Director at: Bureau of Prisons, Northeast Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania, 19106. Your appeal must be received in the Northeast Regional Office within 20 days of the date of this response.

_____
David L. Winn, Warden

7/1/4
Date

Petitioner Exhibit B.

I am appealing the decision made by Warden Winn whereas, my crime was not one of violence and I should receive the 30 days halfway house if not the six months that would afford me a reasonable opportunity to adjust to and prepare for the reentry into the community.

7004 1160 0002 3822 5315

Petitioner Exhibit C.

B-10 Copy Original mailed 7/19/2004